## Case No. 16,584.

### UNITED STATES v. TWO HUNDRED AND THIRTY-SIX DOZEN BOXES OF COSMETICS.

[6 Ben. 543.] [1]

District Court, S. D. New York.   June, 1873.

INTERNAL REVENUE — STAMPS ON COSMETICS EXPORTED—FORFEITURE—CONSTRUCTION OF STATUTES.

A manufacturer of cosmetics in New York, having received an order from a customer at Havana, put up the goods and sent them, without any internal revenue stamp being affixed to any of the boxes, to the wharf of the Havana steamer. for transportation to Havana. The owners of the steamer gave a receipt for them. They were then seized by the government, and an information was filed to forfeit them, on the ground of their not having stamps on the boxes. The goods were not manufactured in the warehouses prescribed by section 28 of the internal revenue act of March 3, 1873 (12 Stat. 727), section 168 of the act of June 30, 1864 (13 Stat. 296). Held that, under section 167 of the act of June 30, 1864. as amended by section 1 of the act of March 3, 1865 (13 Stat. 482), the goods should have been stamped, although they were intended for exportation, and, not having been stamped, were liable to forfeiture.

[Cited in Alkan v. Bean, Case No. 202.]

Thomas Simons, Asst. U. S. Dist. Atty.
Thomas Harland, for claimant.

BLATCHFORD, District Judge. This is an information on a seizure of 236 dozen boxes containing cosmetics, known as "Lily White," which are alleged to be forfeited to the United States for a violation of the internal revenue laws. It comes before the court on an agreed statement of facts. The information avers that the articles seized were articles or commodities mentioned in Schedule C of the act of June 30, 1864, and acts amendatory thereof, and were subject thereby to a duty of one cent on each of said boxes, and were manufactured by Felix B. Strouse, a manufacturer of said articles or commodities at his manufactory, number 84 Duane street, in the city of New York, and that Strouse, on the 18th of February, 1873, at the city of New York, sold, sent out, removed, or delivered the said articles or commodities, so manufactured, before the duty thereon had been fully paid. by affixing thereon the proper stamp, as provided by law, and removed, or conveyed away, or deposited the same in some place, to evade the duty chargeable thereon, contrary to the statute of the United States in such case provided, whereby the same became forfeited to the United States.

The goods were found on the wharf of the Havana steamer, in New York, in a case addressed, "G. D. M., Habana." They were manufactured in New York, by the claimant, and were a cosmetic, with no admixture of

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

domestic spirits. The claimant had received from G. Del Monte of Havana, Cuba, a merchant there, an order, sent from Havana, in these words: "Send 25 gross cascarilla, oval, medium size, equal to what I had before." Del Monte was not an agent of the claimant, but was a frequent purchaser of goods from the claimant. The claimant put up the goods in question, in pursuance of this order, and sent them, without any internal revenue stamps being fixed to any of the boxes, to the wharf of the Havana steamer in a case, addressed as above for transportation to Havana. The owners of the steamer received the case from the claimant, and gave him a receipt therefor, containing its address, as above. The case was then seized. In the ordinary course of business, if the goods had not been seized, the claimant would have received from the owners of the steamer a bill of lading for the goods, expressing their consignment to Del Monte, and would have forwarded such bill of lading to Del Monte at Havana; and the claimant would have had the goods insured on his own behalf against the risks of the voyage to Havana. The retail price or value of each box and of the cosmetic in it did not exceed 25 cents, and the boxes were, in all respects, such packages as could not be lawfully sold in the United States, or lawfully removed for consumption or sale in the United States, without having a revenue stamp, denoting the payment of a tax of one cent, affixed to each package.

The 167th section of the act of June 30, 1864 (13 Stat. 296), as amended by the 1st section of the act of March 3, 1865 (13 Stat. 482), provides, that every maker or manufacturer of any of the articles or commodities mentioned in Schedule C of that act, who shall "sell, expose for sale, send out, remove, or deliver any article or commodity, manufactured as aforesaid, before the duty thereon shall have been fully paid, by affixing thereon the proper stamp, as provided by law, * * * or who shall remove, or convey away, or deposit, or cause to be removed, or conveyed away from, or deposited in, any place, any such article or commodity, to evade the duty chargeable thereon, or any part thereof, shall be subject to a penalty of one hundred dollars, together with the forfeiture of any such article or commodity." Schedule C of the act imposes a stamp duty of one cent on every packet, box, or other enclosure, containing any cosmetic, "made, prepared, and sold or removed for consumption and sale in the United States," where such packet, box, or other enclosure, with its contents, shall not exceed, at the retail price or value, the sum of 25 cents. The same Schedule C imposes a stamp duty of one cent on every packet, box, or other enclosure, containing any medicinal preparations or compositions, "made and sold, or removed for consumption and sale, * * * wherein the person making or preparing the same has, or claims to have, any

private formula, or occult or secret art, for the making or preparing the same, or has, or claims to have, any exclusive right or title to the making or preparing the same, or which are prepared, uttered, vended, or exposed for sale under any letters patent, or held out or recommended to the public, by the makers, venders, or proprietors thereof, as proprietary medicines, or as remedies or specifics for any disease, diseases, or affections whatever affecting the human or animal body," where such packet, box, or other enclosure, with its contents, shall not exceed, at retail price or value, the sum of 25 cents. In the portion of Schedule C which relates to cosmetics, the words are, "made, prepared, and sold or removed for consumption and sale in the United States." In the portion of Schedule C which relates to medicinal preparations, the words are, "made and sold, or removed for consumption and sale." On this difference in language, it is contended, for the claimant, that the goods seized in this case were not subject to a stamp duty. It is claimed, that the goods were not sold in the United States, and that they were removed for consumption and sale in Havana, and were not removed for consumption and sale in the United States. It is claimed, that the words, "in the United States," in the clause respecting cosmetics, must have some meaning, and that the only proper meaning they can have, in respect to cosmetics not sold in the United States, is to understand the provision as reading, that the duty is imposed on cosmetics made in the United States, and then removed to be consumed in the United States, or to be sold in the United States. In other words, it is contended, that, while the medicinal preparations specified are taxable whenever made in the United States, and then sold or removed for consumption or sale, cosmetics, and the other articles classed therewith in Schedule C, are taxable only when made in the United States, and then sold here or removed for domestic consumption or for domestic sale.

A consideration of the history of the legislation on the subject of taxing the articles taxed by Schedule C of the act of 1864 will show that the view urged by the claimant cannot prevail. Schedule C, following section 110 of the act of July 1, 1862 (12 Stat. 484), contained like provisions with those of Schedule C in the act of 1864, in regard to taxing medicinal preparations, and like provisions to those of Schedule C in the act of 1864, in regard to taxing cosmetics. The 109th section of the act of 1862 contained the same provisions which are found in the 167th section of the act of 1864, and this additional proviso, not found in the act of 1864: "Provided, that medicines, preparations, compositions, perfumery and cosmetics, upon which stamp duties are required by this act, may, when intended for exportation, be manufactured and sold, or removed, without having

stamps affixed thereto, and without being charged with duty, as aforesaid; and every manufacturer or maker of any article, as aforesaid, intended for exportation, shall give such bonds, and be subject to such rules and regulations, to protect the revenue against fraud, as may be from time to time prescribed by the secretary of the treasury." It is manifest, from this proviso, that congress regarded Schedule C of the act of 1862, in its imposition of a tax on medicines, preparations, compositions, perfumery and cosmetics, as imposing such tax on articles intended for exportation as well as on articles not intended for exportation, because it proceeds, in the proviso, to enact how such articles, when intended for exportation, may be relieved from the tax to which they would otherwise be subject, by reason of being made here and sold here, or made here and removed from their place of manufacture for consumption or for sale. It follows, therefore, that congress regarded the words, "in the United States," found in the clause of Schedule C respecting perfumery and cosmetics, and not found in the clause of Schedule C respecting medicines and preparations, as not having any such effect as is here contended for by the claimant.

It serves to confirm this view, that congress, by the 27th section of the act of March 3, 1863 (12 Stat. 727), enacted that any person, who should, after September 30, 1863, offer for sale any of the articles named in Schedule C of the act of 1862, whether the articles so offered were imported, or were of foreign or domestic manufacture, should be deemed the manufacturer thereof, and subject to all the duties, liabilities and penalties imposed by the act of 1862 in regard to the sale of such articles without the use of the proper stamp or stamps as required in the act of 1862. This enactment is reproduced, in substance, in the 169th section of the act of 1864, with the addition of the proviso, that, when any such imported articles shall be sold in the original and unbroken package in which the bottles or other inclosures were packed by the manufacturer, the person so selling said articles shall not be subject to any penalty on account of the want of the proper stamp.

But, congress, probably finding that the provision for exportation in the 109th section of the act of 1862 did not sufficiently "protect the revenue against fraud," in the words of such proviso, enacted, by the 28th section of the act of 1863, "that all medicines, preparations, compositions, perfumery and cosmetics, intended for exportation," as provided for in section 109 of the act of 1862, "in order to be manufactured and sold or removed, without being charged with duty, and without having a stamp affixed thereto, may, under such rules and regulations as the secretary of the treasury may prescribe, be made and manufactured in warehouses known and designated, in treasury regulations, as bonded

warehouses, class two." The 28th section then goes on to provide for the giving of bonds by "such manufacturer," and then says: "Such goods, when manufactured in such warehouses. may be removed for exportation, under the direction of the revenue officer having charge thereof without being charged with duty and without having a stamp affixed thereto." The same section then goes on to provide, that such manufacturer, having such bonded warehouse, may, under regulations, convey therein any materials to be used in such manufacture which are allowed by the provisions of the act of 1862 to be exported free from tax or duty, as well as the necessary articles for the preparation, putting up and export of the said manufactured articles, and that every article so used shall be exempt from stamp and excise duty; that articles and materials so to be used may be transferred from any bonded warehouse, under regulations, into any bonded warehouse, class two, in which such manufacture may be conducted, and may be used in such manufacture, and, when so used, shall be exempt from stamp and excise duty; and that any materials imported into the United States may, under regulations, be removed in original packages from on ship board, or from bonded warehouses, into the bonded warehouse, class two, in which such manufacture may be carried on, for the purpose of being used in such manufacture, without payment of duties thereon, and may be there used in such manufacture. The same section then goes on to say: "No article so removed, nor any article manufactured in said bonded warehouse, class two. shall be taken therefrom except for exportation, under the direction of the proper officer of the customs having charge thereof." It is very evident that congress intended that these regulations of the 28th section of the act of 1863 should supersede the provision for exportation made in the proviso to the 109th section of the act of 1862; and that, if it was desired to export the manufactured articles without paying a stamp duty on them, they should be manufactured in the warehouses prescribed and under the regulations provided, with the additional privileges in regard to the use of raw materials, domestic and imported, without paying excise or customs duties thereon. These provisions of the 28th section of the act of 1863 are re-enacted, in substance, in the 168th section of the act of 1864, while, as before remarked, the proviso to the 109th section of the act of 1862 is not found in the 167th section of the act of 1864, which latter section is otherwise a re-enactment of the said 109th section. The articles in question here were not made in any such bonded warehouse as is provided for, and, therefore, could not be removed from the place of manufacture, or exported, without payment of the stamp duty provided for in Schedule C of the act of 1864.

A judgment of forfeiture of the articles seized must be entered.